**UNITED STATES of America, Appellee,**

v.

**Larry A. HENSLEY, Appellant.**

No. 93–1717.

United States Court of Appeals, Eighth Circuit.

Submitted Aug. 19, 1993.

Decided Sept. 19, 1994.

Linda W. Tape, St. Louis, MO, argued, for appellant.

John James Ware, St. Louis, MO, argued, for appellee.

Before BOWMAN, BEAM, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

BOWMAN, Circuit Judge.

In 1988, Larry A. Hensley pleaded guilty to one count of distribution of LSD in violation of 21 U.S.C. § 841(a)(1) (1988). He received a four-year prison sentence and served three years before beginning a three-year term of supervised release. The District Court[1] conducted a revocation hearing on January 7, 1993, and heard evidence that Hensley repeatedly had violated the conditions of his supervised release. Hensley offered explanations in mitigation of the violations. The District Court found that violations had occurred, revoked his term of supervised release, and imposed a two-year prison sentence. Hensley appeals. We affirm the revocation of supervised release and remand for reconsideration of his sentence.

### I.

Hensley first contends that his due process rights were violated because the District Court did not provide a written statement of the evidence it relied upon in ordering revocation of his supervised release. We find this claim to be meritless. The District Court clearly articulated the grounds upon which its order was based: failure to report to his probation officer on two occasions; failure to submit truthful and complete monthly supervision reports for seven consecutive months; failure to submit supervision reports at all for two months; failure to provide monthly urine specimens for five months; failure to participate in an outpatient mental health program; and associating with persons engaged in criminal activity. We conclude that the District Court did not violate Hensley's due process rights either in the revocation hearing or by its order revoking his supervised release.

### II.

Finally, Hensley contends that imposition of the maximum sentence was an abuse of the District Court's discretion given that his violations were "technical" and that he offered mitigating explanations for each vio-

1. The Honorable John F. Nangle, Senior United States District Judge for the Eastern District of Missouri.

lation. This argument is meritless. As part I of this opinion suggests, Hensley's violations were numerous, on-going, and substantive. To the extent required by *Morrissey v. Brewer*, 408 U.S. 471, 488, 92 S.Ct. 2593, 2603–04, 33 L.Ed.2d 484 (1972), Hensley was given an opportunity to offer mitigating circumstances for his violations and to argue that those circumstances weighed against revocation. Although the District Court listened to and explored Hensley's explanations, the court was not bound to credit those explanations or to use them as a basis for sentencing Hensley to less than the maximum prison sentence authorized by the statute. Thus, we find no abuse of discretion in the two-year sentence imposed by the District Court.

### III.

Hensley further contends that the District Court abused its discretion in imposing a two-year prison sentence upon its finding that Hensley had violated conditions of his supervised release. Hensley bases this argument on the assumption that the policy statements in Chapter 7 of the United States Sentencing Guidelines Manual regarding revocation of supervised release, and prescribing a sentence of six to twelve months, are binding and should have been applied to determine Hensley's proper sentence. *See* U.S.S.G. § 7B1.4(a), p.s. (Nov. 1992).

█ Hensley's claim raises a question of statutory construction. This is a question of law, and we review the District Court's judgment de novo. *United States v. Gullickson*, 981 F.2d 344, 346 (8th Cir.1992) (district court's application of the guidelines and relevant statutes is reviewed de novo).

### A.

In *Stinson v. United States*, —— U.S. ——, ——, 113 S.Ct. 1913, 1917, 123 L.Ed.2d 598

(1993), the Supreme Court clearly stated that Guidelines Manual policy statements interpreting Sentencing Guidelines are binding upon the federal courts in the same manner as the Sentencing Guidelines themselves. The Seventh Circuit, originally in agreement with this Circuit in holding that Chapter 7 policy statements are not binding, applied *Stinson* to Chapter 7 policy statements and concluded that they are binding. The Seventh Circuit explained, "[w]hile we may have been previously inclined to accept the proposition that policy statements are merely advisory, notwithstanding the language in *Williams v. United States*, —— U.S. ——, 112 S.Ct. 1112, 117 L.Ed.2d 341 (1992), this view has been explicitly rejected by the Supreme Court's recent decision in *Stinson*." *United States v. Lewis*, 998 F.2d 497, 499 (7th Cir.1993) (citation omitted).[2] Our Circuit, however, does not agree with this reading of *Stinson*.

In *United States v. Levi*, 2 F.3d 842 (8th Cir.1993), we concluded that *Stinson* does not mandate that policy statements included in Chapter 7 of the Guidelines Manual be treated as binding. As we explained in *Levi*, "[w]hile the Sentencing Guidelines, accompanying interpretive commentary, and some policy statements are binding on the court, Chapter 7 policy statements are a different breed." *Id.* at 845. We noted that *Stinson* holds that "commentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." *Id.* (quoting *Stinson*, —— U.S. at ——, 113 S.Ct. at 1915).

█ In the case of Chapter 7 policy statements, there are no accompanying guidelines. Unlike other portions of the Sentencing Guidelines which consist of guidelines followed by commentary or policy statements,

---

**2.** *Williams v. United States*, —— U.S. ——, ——, 112 S.Ct. 1112, 1119, 117 L.Ed.2d 341 (1992), holds that where policy statements prohibit a District Court from acting in a certain manner, they are authoritative with regard to the meaning of the guideline in question. *Stinson v. United States*, —— U.S. ——, ——, 113 S.Ct. 1913, 1915, 123 L.Ed.2d 598 (1993), expands this rationale to the interpretive commentary in the Guidelines

Manual but does not indicate that policy statements which do not interpret or refer to a specific guideline are authoritative or otherwise binding upon the federal courts. *Williams* did not consider policy statements, such as those in Chapter 7 of the Guidelines Manual, that do not interpret guidelines but stand alone as the Commission's preliminary step towards promulgating guidelines.

Chapter 7 consists of policy statements alone. In the introduction to Chapter 7, the Sentencing Commission explains that the "advisory" policy statements in this chapter are "the first step in an evolutionary process" that will culminate in promulgation of guidelines. U.S.S.G. Ch. 7, Pts. A(3), A(5) (Nov. 1992). The binding guidelines will be issued after practitioners have had an opportunity to consider, use, and comment upon the policy statements. *Id.* at Pt. A(3)(a), A(5). Sections 7B1.3 and 7B1.4, applications of which are at issue in the present case, clearly are labeled as policy statements. Unlike the policy statements found binding in *Stinson,* each section "is neither a guideline nor a policy statement that interprets a guideline." *Levi,* 2 F.3d at 845. As we already have held in *Levi,* the policy statements in Chapter 7 of the Guidelines Manual are merely advisory and are not binding. *Id.*

### B.

Because the Chapter 7 policy statements are not binding, 18 U.S.C. § 3583(e)(3) (1988 & Supp. V 1993) controls the maximum sentence allowable in this case. Section 3583(e)(3) allows the District Court to impose a prison sentence of up to the entire time of supervised release upon violation of release conditions, with a maximum of two years for a class C felony. Hensley's underlying conviction is a class C felony. *Id.* § 3559(a)(3) (1988). Thus, the maximum sentence he could have received for his violation of supervised release is two years.

■ Section § 3583(e)(3) directs that in resentencing an offender after revocation of his supervised release, the district court is to consider the factors set forth in 18 U.S.C. § 3553(a) (1988). *Id.* § 3583(e)(3). Section 3553(a) requires, among other things, that the court consider "any pertinent policy statement . . . in effect on the date the defendant is sentenced." *Id.* § 3553(a)(5); *United States v. Fallin,* 946 F.2d 57, 58 (8th Cir. 1991). The government correctly points out that no policy statement regarding sentenc-

ing after supervised release was in effect when Hensley was originally sentenced in 1988, and argues that thus there was no policy statement for the District Court to consider when it sentenced Hensley in 1993 for his supervised release violations.[3] Hensley counters that the date of sentence for the purposes of § 3553(a)(5) is the date in 1993 when he was sentenced for violation of his supervised release, and therefore the court should have considered the six to twelve month sentence set forth in the policy statement then in effect.[4] We agree with Hensley that the proper date of sentence for the purposes of § 3553(a)(5) is the date he was sentenced for violation of his supervised release. *See Fallin,* 946 F.2d at 58 (district court should consider the policy statement in effect at the time appellant is sentenced for violation of supervised release conditions); *accord United States v. Schram,* 9 F.3d 741, 742 (9th Cir.), *cert. denied,* — U.S. —, 114 S.Ct. 482, 126 L.Ed.2d 433 (1993). Thus, before sentencing Hensley, the District Court should have considered the Chapter 7 policy statements in effect in January 1993. *Fallin,* 946 F.2d at 58. The record in this case does not conclusively show whether the District Court did or did not do so.

■ We thus cannot be certain the District Court fully complied with the governing sentencing statutes. Moreover, if in fact the District Court did not comply with the statutory mandate by considering the Chapter 7 policy statements, we cannot be certain the error was harmless. Accordingly, it is appropriate that we remand the case for resentencing. *See Williams v. United States,* — U.S. —, — — —, 112 S.Ct. 1112, 1120–21, 117 L.Ed.2d 341 (1992) (where district court has misapplied Guidelines, "remand is appropriate unless the reviewing court concludes, on the record as a whole, that the error . . . did not affect the district court's selection of the sentence imposed.") If the District Court in fact considered the Chapter 7 policy statements when it imposed the challenged sentence, then the court may simply

---

3. The policy statements regarding sentencing after revocation of supervised release that comprise Chapter 7 of the Guidelines Manual became effective November 1, 1990.

4. *See* U.S.S.G. § 7B1.4, p.s.

reimpose the two-year sentence. Otherwise, it now shall consider the policy statements along with the other sentencing factors, and in the exercise of its discretion then impose the sentence it finds proper, up to and including the statutory maximum of two years.

## IV.

For the foregoing reasons, we affirm the order of the District Court revoking Hensley's supervised release, vacate his sentence, and remand for resentencing in a manner consistent with this opinion.